TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
TORT - MOTOR VEHICLE TORT – CONTRACT – EQUITABLE RELIEF - OTHER

# COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss

**SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
CIVIL ACTION NO.**

20   0529

_Edith Padró Lebrón and Carlos Santana_
_____, PLAINTIFF(S)

V.

**SUMMONS**

_Mass State Police Trooper Michael Trombley et al_
_____ DEFENDANT(S)

MSP Trooper Michael Trombley
7 Sylvan Drive, Wilbraham, Massachusetts

To the above named defendant:

You are hereby summoned and required to serve upon _Hector E. Pineiro_
plaintiff's attorney, whose address is _807 Main Street, Worcester, MA 01610_,
an answer to the complaint which is herewith served upon you, within 20 days after service of this summons
upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. You are also required to file your answer to the complaint in the
office of the Clerk of this court at Springfield either before service upon the plaintiff's attorney or within a
reasonable time thereafter.

Unless otherwise provided by rule 13(a), your answer must state as a counterclaim any claim which you
may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the
plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Judith Fabricant, Esq., at Springfield the _____ day of _____
in the year of our Lord two thousand

COPY

_Edward L. Moynahan_

_Laura S. Gentile_
Laura S. Gentile, Esquire
CLERK OF COURTS

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
for each defendant, each should be addressed to the particular defendant.

FORM No. 1

NOTICE TO DEFENDANT – You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's office.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 20____, I served a copy of the within summons, together with a copy of the complaint, in this action, upon the within named defendant, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5):

_____

_____

_____

_____

Dated: _____, 20____

N.B. TO PROCESS SERVER:
PLEASE PLACE <u>DATE</u> YOU MAKE SERVICE ON DEFENDANT IN THIS BOX <u>ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.</u>

(                                          )
( *December 31*          , 20 *20* )
(                                          )

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>**2079CV00529** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br>Lebron, Edith Padro et al vs. Jones, Mass State Police SGT Liam R et al | Laura S Gentile, Clerk of Courts |
|---|---|

| TO:  Robert A Scott, Esq.<br>Law Office of Hector E. Pineiro<br>807 Main St<br>Worcester, MA 01610 | COURT NAME & ADDRESS<br>Hampden County Superior Court<br>Hall of Justice - 50 State Street<br>P.O. Box 559<br>Springfield, MA 01102 |
|---|---|

### TRACKING ORDER - A - Average

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**                                     **DEADLINE**

|  | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court |  | 01/07/2021 |  |
| Response to the complaint filed (also see MRCP 12) |  | 02/08/2021 |  |
| All motions under MRCP 12, 19, and 20 | 02/06/2021 | 03/08/2021 | 04/07/2021 |
| All motions under MRCP 15 | 12/03/2021 | 01/03/2022 | 01/03/2022 |
| All discovery requests **and depositions** served and non-expert depositions completed | 09/29/2022 |  |  |
| All motions under MRCP 56 | 10/31/2022 | 11/28/2022 |  |
| Final pre-trial conference held and/or firm trial date set |  |  | 03/28/2023 |
| Case shall be resolved and judgment shall issue by |  |  | 10/09/2023 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>. You will be notified of that date at a later time.**

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED<br>**10/13/2020** | ASSISTANT CLERK<br>**Shana Wilson** | PHONE<br>**(413)735-6017** |
|---|---|---|

# CIVIL ACTION COVER SHEET

**DOCKET NUMBER**

**Trial Court of Massachusetts**
**The Superior Court**

**PLAINTIFF(S):** Edith Padro Lebron, Carlos Santana

**COUNTY** Hampden

**ADDRESS:** 35 Keith Street, Springfield, MA

**DEFENDANT(S):** Liam Jones, Michael Trombley, Paul Anderson, Louis P. Weir, William H. Lopes, Robert P. Bohl, Donald P. Brown, Mark D. Templeman, Julio M. Toledo, Christopher Bates, City of Springfield, John Does 1 - 4

**ATTORNEY:** Hector E. Pineiro

**ADDRESS:** Law Office of Hector E. Pineiro

807 Main Street

Worcester, MA 011610

**BBO:** 555315

**ADDRESS:**

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| AB1 | Tortious action involving municipality | A | [X] YES   [ ] NO |

*If "Other" please describe:

**Is there a claim under G.L. c. 93A?** [ ] YES  [X] NO

**Is this a class action under Mass. R. Civ. P. 23?** [ ] YES  [X] NO

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ............................................................ $_____
2. Total doctor expenses ............................................................. $_____
3. Total chiropractic expenses ...................................................... $_____
4. Total physical therapy expenses .................................................. $_____
5. Total other expenses (describe below) ............................................ $_____
    Subtotal (A): $_____

B. Documented lost wages and compensation to date ...................................... $_____
C. Documented property damages to date ................................................. $_____
D. Reasonably anticipated future medical and hospital expenses .......................... $_____
E. Reasonably anticipated lost wages ................................................... $_____
F. Other documented items of damages (describe below) .................................. $_____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
unlawful police entry and search of a residence without probable cause; excessive force, battery, property damage, theft, pain and suffering; damages, exclusive of attorney fees and punitive damages, in excess of:

**TOTAL (A-F):** $100,000.00

### CONTRACT CLAIMS
(attach additional sheets as necessary)

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

**TOTAL:** $_____

**Signature of Attorney/ Unrepresented Plaintiff: X**   **Date:**

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record: X**   **Date: October 9, 2020**

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss                                          HAMPDEN SUPERIOR COURT
                                                     **Civil Action No.2079CV00529**

EDITH PADRO LEBRON AND CARLOS          )
SANTANA,                               )
    Plaintiffs                  )
                                       )
                                       )
MASS. STATE POLICE SGT. LIAM R. JONES MSP)        HAMPDEN COUNTY
TROOPER MICHAEL TROMBLEY, TROOPER      )          SUPERIOR COURT
ALFRED BURGOS, PAUL ANDERSON-          )          **FILED**
HAMPDEN COUNTY SHERIFF'S OFFICE,       )
LOU P. WEIR-HCS, SPRINGFIELD POLICE    )          DEC 18 2020
OFFICER WILLIAM H. LOPES, LT. JULIO    )
TOLEDO-SPD, OFFICER ROBERT P. BOHL-SPD, )         *[signature]*
OFFICER DONALD P. BROWN –SPD,          )          CLERK OF COURTS
DET. MARK D. TEMPLEMAN-SPD,            )
CHRISTOPHER P. BATES-SPD, CITY OF      )
SPRINGFIELD and SPRINGFIELD POLICE     )
OFFICERSJOHN DOES 1-4,                 )
    Defendants                  )

<u>FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL</u>

INTRODUCTION

1.  When Edith Padro Lebron awoke to the sound of her front door being broken down and
    then from her bedroom door saw men in plainclothes charging up the stairs at her, she
    thought they were thieves, and she was right. They seized her and threw her down the
    stairs, body slammed her grandson Carlos Santana, 18, to the floor, tore the house apart,
    and stole an envelope with $2,000.00 for the mortgage payment Ms. Padro Lebron was
    about to make on the home.

2.  These thieves had badges and a search warrant, though they did not announce themselves
    as police when they broke into the house. The pretext for the search was that a son of Ms.
    Padro Lebron who had not lived at the home for at least 15 years was involved in a drug
    ring. Since leaving he had listed the address on registrations for a motorcycle and had
    recently been seen visiting in the front yard. But the affidavit State Police Sergeant Liam
    R. Jones signed to get a Judge or Magistrate's approval of the warrant had nothing from
    any source – no report from informant or surveillance, no wiretapped phone conversation
    or statement by any witness -- to suggest the occurrence of drug transactions, or the
    presence of drugs, or criminal activity of any kind, at the Springfield home of Ms. Padro
    Lebron and her husband.

1

*6*

3.  The warrant was invalid because it was based on the false premise that this was the home of Ms. Padro Lebron's other son, Jose Cedeno; it was facially invalid because had that been his home the warrant affidavit nonetheless made no showing of a nexus between criminal acts, evidence, or contraband and the home in order to demonstrate probable cause to search. **Liam Jones' affidavit was so lacking in indicia of probable cause that no reasonably competent officer would rely on it to seek a warrant -- nor could he reasonably believe, were the warrant to issue, that it was valid.**

4.  The police executed their unlawful warrant unlawfully by using force on Ms. Padro Lebron (a former police officer herself) and Mr. Santana far in excess of any needed to assure the officers' safety, by assaulting and injuring them, subjecting them to prolonged detention for no legitimate purpose, and by stealing the mortgage money.

5.  The break-in and search left the home in a shambles. The police reported seizing only a bag of rubber bands and a "white bottle containing cutting agent." The disappearance of Ms. Padro Lebron's mortgage money was outright theft.

6.  Ms. Padro Lebron and Mr. Santana bring this action in federal civil rights to recover for unlawful search, seizure with excessive force and needlessly prolonged detention in violation of their right to be free from unreasonable search and seizure; and they sue in tort for trespass, assault and battery with personal injury, damage to property and theft.

## JURISDICTION

7.  The action is brought under 42 U.S.C. § 1983, for violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, claims subject to the jurisdiction of this Court per Title 28 U.S.C. § 1331 and 1343; and for common law torts subject to the supplemental jurisdiction of the Court per 28 U.S.C. § 1367. Plaintiff also asserts claims under the Massachusetts Declaration of Rights and statutes.

8.  The action is timely pursuant to the Second Updated Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 (coronavirus) Pandemic adopted by Supreme Judicial Court May 26, 2020, effective June 1, 2020, tolling the statute of limitations from March 17, 2020, through June 30, 2020, such that the number of days remaining as of March 17, 2020, for timely filing of an action would remain the number of days remaining for timely filing after June 30, 2020.

9.  Because the action accrued June 29, 2017, as of March 17, 2020, the number of days remaining for timely filing was 107 days from and after that date, through June 29, 2020. Pursuant to the aforesaid Order as of June 30, 2020, the statute ran 107 days from and after that date, through October 16, 2020.

## PARTIES

3.  Plaintiff Edith Padro Lebron ("Mrs. Padro") resides at 35 Keith Street, Springfield, Hampden County, Massachusetts.

4.  Plaintiff Carlos Santana ("Mr. Santana") resides at resides at 35 Keith Street, Springfield, Hampden County, Massachusetts.

5.  Defendant Sgt. Liam Jones, ("Sgt. Jones"), was at all pertinent times a duly sworn Trooper of the Massachusetts State Police ("MSP").  He resides at 290 Parker Street, East Longmeadow, Hampden County, Massachusetts.

6.  Defendant Alfred Burgos ("Trooper Burgos") was at all pertinent times a duly sworn MSP Trooper.  He resides at 1102 Avalon Drive, Northboro, Worcester County, Massachusetts.

7.  Defendant Michael G. Trombley ("Trooper Trombley") was at all pertinent times a duly sworn MSP Trooper.  He resides at 7 Sylvan Dr., Wilbraham, Hampden County, Massachusetts.

8.  Defendant Paul Anderson ("Officer Anderson") was at all pertinent times a duly sworn officer of the Hampden County House of Corrections.   His usual place of business is located at 627 Randall Road, Ludlow, Hampden County, Massachusetts.

9.  Defendant Louis P. Weir ("Officer Weir") was at all pertinent times a duly sworn officer of the Hampden County House of Corrections.   He resides at 41 Hitching Post Lane, Wilbraham, Hampden County, Massachusetts.

10. Defendant William H. Lopes ("Officer Lopes") was at all pertinent times a duly sworn officer of the Springfield Police department officer (SPD).  He resides at 3 Bradlind Ave. Wilbraham, Hampden County, Massachusetts.

11. Defendant Robert P. Bohl, III ("Officer Bohl") was at all pertinent times a duly sworn officer of the Springfield Police department officer (SPD).  He resides at 6 Elaine Dr. Ludlow, Hampden County, Massachusetts.

12. Defendant Donald P. Brown ("Officer Brown") was at all pertinent times a duly sworn officer of the Springfield Police department officer (SPD).  He resides at 56 Reservoir Rd. Westhampton, Hampden County, Massachusetts.

13. Defendant Mark D. Templeman ("Officer Templeman") was at all pertinent times a duly sworn officer of the Springfield Police department officer (SPD).  He resides at 53 Tufts Street, Springfield, Hampden County, Massachusetts.

14. Lt. Julio M. Toledo ("Officer Toledo) was at all pertinent times a duly sworn officer of the Springfield Police department officer (SPD).  He resides at 81 Brightwood Ave, Springfield, Hampden County, Massachusetts.

15. Christopher P. Bates ("Officer Bates") was at all pertinent times a duly sworn officer of the Springfield Police department officer (SPD).  He resides at 157 Abbott Street, Springfield, Hampden County, Massachusetts.

3

16.   Defendant City of Springfield ("the City") is a municipal corporation duly organized and chartered under the laws of the Commonwealth of Massachusetts, with its place of ("the City") is a duly incorporated municipality with a usual place of business located at 36 Court Street, Springfield, Hampden County, Massachusetts.

17.   Officers John Does 1-4 are unidentified members of the SPD or the MSP.

18.   Each individual defendant is sued in his or her individual capacity.

## FACTS

19.   Each of the foregoing paragraphs is incorporated as if fully set forth herein.

20.   According to Massachusetts State Police Search Warrant Execution Report #2017-108-12/81, during January 2017 members of the Hampden County Narcotic Task Force who work for the Hampden County District Attorney's Office which include the State Police, Springfield Police, and from officers employed by the Hampden County Sheriff's Office.

21.   For purposes of this complaint they shall be collective referred herein as ("SPDU Hampden-HCNTF").

22.   At all pertinent times Sgt. Jones was a member of the MSP working in Hampden County District Attorney's narcotics unit.

23.   At all pertinent times Trooper Trombley was a member of the MSP working in the Hampden County District Attorney's narcotics unit.

24.   At all pertinent times, Trooper Alfred Burgos was a member of the MSP working in the Hampden County District Attorney's narcotic unit.

25.   At all pertinent times, Trooper Alfred Burgos was a member of the MSP working in the Hampden County District Attorney's narcotic unit.

26.   At all pertinent times, Officer Paul Anderson ("Anderson") was employed by the Hampden County Sheriff's Department but was also a member of the SPDU Hampden-HCNTF unit.

27.   At all pertinent times, Officer Lou P. Weir ("Weir") was employed by the Hampden County Sheriff's Department but was also a member of the SPDU Hampden-HCNTF unit.

28.   At all pertinent times, Lt. Julio Toledo ("Toledo") was employed by the Springfield Police Department narcotics unit but was also a member of the SPDU Hampden-HCNTF unit.

29.   At all pertinent times, Officer Christopher P. Bates ("Bates") was employed by the Springfield Police Department narcotics unit but was also a member of the SPDU



Hampden-HCNTF unit.

30.  At all pertinent times, Officer Robert P. Bohl ("Bohl") was employed by the Springfield Police Department narcotics unit but was also a member of the SPDU Hampden-HCNTF unit.

31.  At all pertinent times, Officer Donald P. Brown ("Brown") was employed by the Springfield Police Department narcotics unit but was also a member of the SPDU Hampden-HCNTF unit.

32.  At all pertinent times, Officer Mark D. Templeman ("Templeman") was employed by the Springfield Police Department or MSP narcotics unit but was also a members of the SPDU Hampden-HCNTF unit.

33.  At all pertinent times each defendant acted under color of law pursuant to the statutes of the Commonwealth of Massachusetts and/or the statutes, ordinances, regulations, policies, customs, practices, and usage of the MSP, City of Springfield and the Hampden County Sheriff's Office.

### A history of impunity regarding the use of excessive force

34.  The police raid incident complained of herein, on June 29, 2017, at 35 Keith Street was the direct and proximate result of a longstanding policy, practice, and usage of the City of Springfield and by members of the SPDU Hampden-HCNTF unit.

35.  As the all pertinent times the aforesaid defendants observed a policy, practice, and usage of staging military-style home invasions in the so called "war on drugs" in which officers could beat people, taunt, curse them at gunpoint with complete impunity – even when officers stormed the wrong dwellings and subjected innocent citizens to such treatment.

36.  By their acts and omissions in response to repeated incidents of such conduct -- some of which are described below -- the City of Springfield and members of the SPDU Hampden-HCNTF unit demonstrated deliberate indifference to the rights of persons to freedom from armed invasion of their homes without cause and to freedom from gratuitous violence and threats at the hands of police.

### June 29, 2017: The raid on plaintiffs' home at 35 Keith Street, Springfield

37.  As stated earlier, during January 2017 members of the Hampden County Narcotic Task Force along with Officer from the SPD began to gather information during a criminal investigation regarding a drug trafficking organization that was supplying heroin to Hampden County.

38.  The lead investigator was Trooper Jones.

39.  A "Search Warrant Execution Report" (SWER), prepared and signed by Trooper Jones identified a criminal investigation and "confirmed" that one Emmanuel Soto (AKA

"Cacho") was the leader of a heroin drug ring.

40.  Investigators identified various other members of this alleged drug organization, including David Ramirez Perez, Joel Pacheco and Ms. Padro's son Jose Cedeno.

41.  According to their investigation and to the SWER, during the investigation police claimed to have identified numerous locations, vehicles and individuals involved in the distribution of heroin.

42.  Trooper Jones' SWER noted that the "lengthy investigation" culminated in the execution of search warrants at businesses, residences, vehicles, storage facilities, etc.

43.  Trooper Jones prepared a seventy (70) page Affidavit in support of an omnibus search warrant in order to search multiple properties and brought it to a Judge in the Hampden Superior Court, Judge Mark Mason for review and approval.

44.  **Liam Jones' affidavit was so lacking in indicia of probable cause as to Cedeno residing at 35 Keith Street in Springfield, MA or as to any nexus between that address and criminal activity that no reasonably competent officer would rely on it to seek a warrant; and no competent officer could reasonably believe that the warrant issued in reliance on the affidavit was valid.**

45.  Judge Mason approved the execution of the search warrant for 35 Keith Street on the basis of Trooper Jones sworn testimony and relying on his representations that the information he provided to the Court was true and accurate, i.e. the probable cause he had to search a number of properties, cars, businesses and storage facilities.

46.  In it, Trooper Jones represented to Judge Mason that 35 Keith Street Springfield was a property occupied or possessed by Jose L. Cedeno (dob: 01-21-1991) when he knew this was not the case.

47.  Judge Mason signed the omnibus search warrant but regulated the execution of same as to 35 Keith Street in two respects: it could not be executed at night and it did not authorize the police to enter the property without announcement, i.e. the police could not break the doors to the apartment without first announcing themselves.

48.  Some of the residences that the Court allowed to be searched included 26 Wigman Place, Springfield, 92 Moulton Street, Springfield, Restless Towing and Auto Repair, 11 Lowell Street, West Springfield, 95 Dawes Street, Springfield, MA among others.

49.  At all times pertinent, the owners of 35 Keith Street were the plaintiff, Padro Lebron and her husband, Mr. Colon, a truck driver.

50.  Padro Lebron and her husband had owned 35 Keith Street for approximately 15 years and had a mortgage on their home.

51.    At all pertinent times, only three individuals lived at 35 Keith Street, Ms. Padro Lebron, her husband (who had left home to go to work before the raid began) and her 18-year old grandson, Plaintiff Carlos Santana.

52.    35 Keith Street is a three floor single family home located in a working class neighborhood in Springfield.

53.    As mentioned earlier one of the targets of the drug investigation and of the search warrant, was Jose Cedeno ("Cedeno"), Padro Lebron's adult son.

54.    Despite Trooper Jones false representations to a Superior Court judge that Cedeno occupied and was in "possession" of 35 Keith Street, Springfield, Cedeno had not lived on 35 Keith Street for close 15 years.

55.    At all pertinent times, Trooper Jones and his codefendants knew who lived and occupied 35 Keith Street, Springfield.

**The police had no evidence tying Jose Cedeno to 35 Keith Street, Springfield**

56.    When Trooper Jones obtained the search warrant to 35 Keith Street, he, nor his codefendants' had any evidence Cedeno lived there.

57.    Because there was no credible surveillance performed on this property Trooper Jones did not reveal to the Court this single family home was owned by Padro Lebron and her husband.

58.    No phone accounts, utilities, Census information or car registration tied Cedeno to 35 Keith Street, i.e. Registry of Motor Vehicle.

59.    No controlled buys of narcotics with the use of confidential informants connected 35 Keith Street with the sale or distribution of heroin.

60.    No light pole cameras, frequently used by Trooper Jones and by the SPDU Hampden-HCNTF unit or the SPD narcotics unit tied the comings and goings of Cedeno in and out of 35 Keith Street in 2017.

61.    So how did Trooper Jones and his codefendants' associated Cedeno to 35 Keith Street to procure the search of this property?

62.    Cedeno was tied up to 35 Keith Street in the most paltry manner.

63.    According to Jones, Cedeno had been observed driving a Cadillac to New York that was owned by his codefendant Soto used to transport drugs.

64.    Investigators learned on March 13, 2017 after they contacted the New York Intelligence Center (nearly 3 months before the execution of the warrant) that Cedeno was stopped

and issued a citation for speeding in Orange County, NY which identified Cedeno of 35 Keith Street, Springfield.

65.   At page 66 of his Affidavit Trooper Jones noted "35 Keith Street is the residence of Jose Cedeno, one of the targets of this this investigation…"

66.   Jones concluded and swore to the Court that Cedeno lived at 35 Keith Street on the basis of a vehicle citation for speeding in NY in January 2017 when Cedeno told Orange County police he lived at 35 Keith Street. (Trooper Jones Affidavit at 66).

67.   Trooper Jones also represented to the Court that Cedeno "also has a motorcycle registered to him at this address and "[S]oto, the principal target of this investigation, has been observed at this address."  Affidavit at page 66.

68.   While the registration of a motorcycle to this address may have been correct the remaining information was false because neither Jones nor any other codefendant ever observed Soto entering or coming or going from the interior of 35 Keith Street except one day before June 29, 2017, when Cedeno brought his grandchildren to Padro Lebron's house and was accompanied by Soto but neither entered the house and remained on the public portion of 35 Keith Street.

69.   To weasel the police contingent into 35 Keith Street Trooper Jones lied to the court that they had observed a Honda Accord "on June 28, 2017 parked in the driveway of this residence."[1]

70.   Buried between paragraphs and lines of Trooper Jones' Affidavit in support of the search warrant is a reference to another property the SPDU Hampden-HCNTF obtained a search warrant to search: 92 Moulton Street, Springfield.

71.   In page 64 of his Affidavit Trooper Jones stated: "This is the same vehicle that SOTO used to secretly meet SANTIAGO at the Target Parking lot after fleeing and escaping from police officers.  PACHECHO stopped using this vehicle and investigators located it parked in front of 92 Moulton Street (Cedeno's residence) which is a dead-end street in the City of Springfield and an ideal spot to park the Honda Pilot to conceal it from law enforcement. Investigators recently observed SOTO entered the unoccupied Honda Pilot and spent several minutes in it before exiting and leaving the area. This leads investigators to believe that SOTO has heroin secreted in the Honda Pilot and 92 Moulton Street."

72.   No similar representation was ever made by Trooper Jones connecting Soto, Cedeno or Padro Lebron to the distribution of heroin to 35 Keith Street.

**The Illegal entry of 35 Keith Street, Springfield on June 29, 2017**

---

[1] Trooper Jones also stated in his affidavit that on June 21, 2017 investigators observed Soto leave Restless Towing and travelled to 26 Wigman street and few minutes later "Soto then left 26 Wigman Street and drove directly to Keith Street the residence of Cedeno."

73. Despite being required to knock and announced themselves before executing the search warrant at 35 Keith Street Defendants' failed to do so and busted through two front doors shortly before 6am, i.e. they broke the balcony door and the main door entrance to the house.

74. Screams, yelling and a great deal of commotion woke Padro Lebron from her bed located on the second floor of her house next to a flight of stairs.

75. When she came out of her bedroom she saw a group of men running towards her.   In shock she screamed in Spanish "Que pasa? Que pasa?" but no one answered to her why they were there.

76. Officer Doe grabbed and tossed her down the flight of stairs it caused her body to stumble and slide down the entire flight of stairs causing injuries to her back and buttocks until her right foot and leg got caught at the bottom post of the stairs.

77. When he Doe 1 tossed Padro Lebron down the flight of stairs she had a visible cast in her left leg from an injury to her left knee. Padro Lebron reinjured her left knee as well and experienced pain in her right leg and knee as well.

78. When she landed at the bottom of the stairs she heard cries from Carlos, her 18-year old grandson.

79. Mr. Santana was roused up from his sleep, slapped in the face and jaw and slammed onto the floor in his bedroom by a group of officers who forcefully brought him to the first floor of the apartment.

80. Padro Lebron had an anxiety attack and was told to shut-up.  She and her grandson were handcuffed and remain so during their ordeal.

81. A video tape obtained by police captures a partial interaction between police and Padro Lebron (some in English, some in Spanish).

82. Padro Lebron categorically told police her son did not live at 35 Keith Street, i.e. "But he doesn't have a bedroom here?" A: No.  "Does he have any space here, does he have any things here?" A: No, no, no."

83. One of the Defendants translated for Padro Lebron and is heard saying that Cedeno didn't live there, didn't stay there, and didn't sleep in her house.

84. Padro Lebron asked to see a copy of the search warrant and was told they didn't need a search warrant.

85. While ransacking her house they kicked and injured a small dog she had loose in the house.

9

86. They also brought a police K-9 to search for drugs who urinated on Santana's clothing.

87. Initially no one spoke in Spanish with her but one of the Officers who spoke to her in Spanish with a Puerto Rican accent apologized to Padro Lebron.

88. He told her "We went overboard."

89. The Spanish speaking officer said to Carlos and Padro Lebron told her "My bad," "if I was in your shoes…" and "I know what you're going thru."

90. During the raid Army recruiters who were supposed to sign Carlos to join the US Army were turned away.

91. Disgusted by what law enforcement had done to him and his grandmother he decided not to enlist into the US. Army.

92. The cause significant property damage to her apartment and force her to incur monies repairing her house.

93. In addition, Padro Lebron had cash in her bedroom to pay her mortgage.

94. The envelope she had in her bedroom with her mortgage money can be seen during a pre-search and post search videotape taken by police.

95. Approximately $2,000 was stolen from her.

96. According to return of officer serving the search warrant, signed by MSP Sgt. Jones no money was recovered inside of 35 Keith Street.

97. The evidence person is described in records as officer Louis Weir.

98. The only evidence recovered according to SPD Det. M. Templeman was a "bottle of laxative" on the "Top of dresser" and "Clear plastic bag with/black rubber bands."

99. No drugs were found in her apartment.

100. Police remained in Padro Lebron's house for hours.

101. As a direct and proximate result of the foregoing Padro Lebron and Santana experienced an extreme and terrifying invasion of privacy experienced a great deal of physical pain and mental suffering.

**A longstanding patently unconstitutional use of force policy by the SPD**

102. The use of excessive force with impunity in police raids was at all pertinent times part and parcel of the general *de facto* policy, custom, practice and usage of the City that

essentially gave officers extreme and unwarranted discretion in the use of force without requiring them to account for the same.

103.   As a matter of policy the supervisory/policymaking defendants accorded this prerogative in particular to members of the narcotics unit.

104.   As a matter of policy the supervisory/policymaking defendants did not substantively monitor, assess, or regulate the use of force by SPD officers but sought to maintain the appearance of doing so.

105.   As a matter of policy the supervisory/policymaking defendants did not initiate inquiry into the cause of serious physical injuries to persons in SPD custody – no matter how evident an arrestee's injuries might be at booking or how clearly the arrestee stated a claim of physical abuse, and regardless of medically diagnosed injuries not adequately explained (if at all) in arresting officers' reports.

106.   As a matter of policy the supervisory/policymaking defendants did not in any way take notice of or action regarding an officer's possible use of excessive force unless the alleged victim submitted a formal complaint in writing to the SPD.

107.   As a matter of policy the supervisory/policymaking defendants, in doing show investigations into formal written complaints of physical abuse, treated officers' accounts of the incidents as authoritative regardless of physical evidence or testimony to the contrary.

108.   Although the supervisory/policymaking defendants treated officer accounts of violent incidents as authoritative, as a matter of policy they did not investigate circumstances suggestive of untruthful reporting – in particular the systematic and customary false reporting and non- reporting of excessive force by officers who perpetrated it and also by those who witnessed it.

109.   The policy is evident by the police commissioner practice at all pertinent times of automatically clearing officers of excessive force complaints where complainants would not submit to personal interrogation.

110.   The policy is evident in the SPD practice of generating and filing of vague, perfunctory use of force reports and injured prisoner reports conveying an impression of oversight while the reports in fact did not enable substantive review of officers' conduct and were ignored by the police commissioner, except for his review of meaningless statistical summaries.

111.   The policy is evident from the fact that in cases of serious injury, such as broken facial bones, at all pertinent times there was no review at the SPD of officer reports, booking videos, or medical records  to see if officers plausibly accounted for the injuries.

112.   The policy is evident from the fact that no supervisory/policymaking defendant or designee sought to track the types or severity of injuries prisoners sustained or to

compare them to officer accounts of the incidents, notwithstanding that the injuries included serious and disabling injuries.

113.  The policy is evident from the fact that at all pertinent times the supervisory/ policymaking defendants failed to require training of booking officers and their superiors to inspect for and to document prisoner injuries, as required by the Massachusetts injured prisoner statute, M.G.L. c. 276 § 33.

114.  In virtually every case where the SPD investigated allegations of excessive force against a police officer it has found the allegations to be unsubstantiated.

115.  At all pertinent times the SPD officers that came in contact with Plaintiff's were aware from their own experience of lax policies and practices of their organizations regarding the use of force and reporting of the use of force.

116.  At all pertinent times the policy of impunity for the use and false reporting of excessive force was well known to members of special SPD units such as the narcotics unit that were involved in the raid from which this suit arises.

117.  The foregoing policy, usage and practice of the supervisory/policymaking defendants regarding the use of force demonstrates a callous disregard and deliberate indifference to the rights of citizens coming into contact with the SPD to be free of unnecessary force and communicated to the SPD officer defendants that if they engaged in the use or false reporting of excessive force they would not be punished.

118.  By way of example, and without limitation there have been a number of disturbing incident of police vs. civilian violence involving members of the SPD.

119.  In Douglas v. City of Springfield, Bigda et al, 3:14-cv-30210 (Dkt. 19-1) (D. Mass. Jan. 21, 2015) Mr. Douglas alleged in an amended complaint that Detective Bigda a notorious leader of the SPD Narcotics unit who has since been indicted in federal court for beating two juveniles alleged he was punched after being handcuffed, pistol whipped, and his girlfriend slapped in the face by one of the officers.

120.  An number of important protagonists in Douglas' case were Trooper Liam Jones, who worked hand in glove with the SPD Narcotics unit along with Sgt. Kent a supervising narcotics officer, Det. Lopes, Det. Templeman and Det. Bates.

121.  On October 14, 2016 the Honorable Katherine A. Robertson, U.S. Magistrate Judge in a Report and Recommendation Regarding Defendant's [City of Springfield] Motion for Summary Judgment, denied the City of Springfield's motion stating ruling: "A reasonable finder of fact could also infer that there were flaws in the city's investigation of civilian complaints that demonstrated deliberate indifference to the risks posed by officers against whom large number of civilian complaints about excessive use of force had been made."

122. Judge Robertson also opined "The IIU ("Internal Investigating Unit") of the Springfield Police submitted as evidence by Plaintiff show what appears to be a consistent pattern of rejecting civilian complaints against police officers." (citations omitted).

123. Judge Robertson also concluded "Taking these factors into account, a reasonable finder of fact could conclude that Springfield's investigative process was less than effective at identifying officers prone to the use of excessive force."

124. Finally, she concluded "Because Plaintiff claims to have been the victim of excessive use of force during the execution of an arrest warrant, he has "produce[d] evidence that serious prior incidents similar to the alleged constitutional violation in question put the municipality on inquiry notice of [the officers'] danger to the public and that the police department's policy of ignoring or covering up those incidents was 'the moving force' behind the alleged violation."

125. Although the Court records in Douglas was rife with examples of police vis-à-vis citizen abuse Judge Robertson found that Officer Templeman had been the subject of some thirty IIU complaints, twenty of which involved allegations of excessive force, i.e. including a complainant that alleged that he was kicked in the face during a drug raid or someone else who claimed he was beaten by him at the police station.

126. Judge Robertson found another officer (Patruno) had been subject to nine (9) IIU complaints including complaints of excessive force.

127. She also found that Kakley (also involved in the Soto and Cedeno case) had thirteen (13) IIU complaint, five alleging excessive force.

128. Judge Robertson found that Christopher Bates, had been the subject of twelve (12) IIU complaints, three of which alleged unreasonable force.

129. Court records from the Douglas case demonstrate that Det. Bigda had been the subject of Twenty-six complaints (26) IIU civilian complaints some, which the US Magistrate Judge found involved violent conduct during drugs raids or conclusions by judges he had provided false testimony in State Court.[2]

130. In April 2018 the US Department of Justice initiated an investigation of the SPD narcotics unit under the Violent Crime Control And Law Enforcement Act of 1994.

131. As part of their investigation into the beating of an adolescent by Officer Bigda at the Palmer police station they convened a federal grand jury.

132. During the federal grand jury the US Attorney's Office called important members of the SPD Narcotic unit including the commanding officer Capt. Steven Kent, Jose Robles, Luke Cournoyer, Lt. Alberto Ayala and Edward Kalish --all of which asserted their Fifth

---

[2] She also found that Kent, the supervisor of the narcotics unit had been the subject of twenty-three IIU complaints, sixteen of which involved allegations of excessive force.

Amendment rights and all of which had to be immunized to testify about corrupt and illegal practices in the narcotics unit.

133.   After a thorough investigation the USDOJ concluded on July 8, 2020 there was reasonable cause to believe that the SPD Narcotics Bureau officers engaged in a pattern and practice of excessive force in violation of the Fourth Amendment of the United States Constitution.

134.   Furthermore they also concluded that while IIU has investigated some excessive force complaints made by members of the public, its investigations lack critical content needed to determine if an allegation should be sustained. This has resulted in zero sustained findings of excessive force against any Narcotics Bureau officer in the last six years.

135.   Mayor Sarno, on whose time watch all of these abuses occurred reacted to the USDOJ report by publicly stating the conclusions were "Disturbing and Dissapointing."

136.   The foregoing policy, usage and practice of the supervisory/policymaking defendants was a moving force in cause of the injuries complained of herein because it gave SPD officers a sound basis to believe their abuses of the plaintiffs would not result in discipline or other consequence.

137.   On the day in question Padro Lebron and her grandson went to Mayor Sarno's office to complain about what happened.

138.   Mayor Sarno's office aware of the allegations send the Plaintiff's to the police department who told them they had no records of police entering her apartment.

139.   No one has been disciplined.

### COUNT I
### 42 U.S.C. § 1983 unreasonable force & unreasonable entry and search of dwelling
**Defendants Trooper Jones, Trooper Trombley, Trooper Burgos, Officer Anderson, Officer Weir, Officer Lopes, Lt. Toledo, Officer Bohl, Officer Brown, Det. Templeman, Det. Bates and Officer Does 1-4**

140.   Each of the foregoing paragraphs is incorporated as if fully set forth herein.

141.   **Trooper Jones' affidavit was so lacking in any indicia of probable cause as to Cedeno's residing at 35 Keith Street in Springfield, MA or as to any nexus between 35 Keith St., and any criminal activity that no reasonably competent officer would have relied on it to seek a warrant; and no competent officer could reasonably believe that the warrant issued in reliance on the affidavit was valid.**

142.   As a direct and proximate result of Defendants' violations of their constitutional rights to be free of unreasonable search and seizure, and excessive force, the plaintiffs were harmed as set forth herein.

14

## COUNT II
### 42 U.S.C. § 1983, Monell Liability
### Defendants City of Springfield,

143.    Each of the foregoing paragraphs is incorporated as if fully set forth herein.

144.    The Defendant City of Springfield, by its custom and usage of failing to train, supervise or to exercise discipline in the use of excessive force and in reporting of excessive force and arrestees' injuries, acted with deliberate indifference to the constitutional rights of individuals who came in contact with the SPD, which in whole or in part was the moving force behind the unlawful misconduct of defendants and the resulting injuries of the plaintiffs.

## COUNT III
### Conspiracy
**Defendants Trooper Jones, Trooper Trombley, Trooper Burgos, Officer Anderson, Officer Weir, Officer Lopes, Lt. Toledo, Officer Bohl, Officer Brown, Det. Templeman, Det. Bates and Officer Does 1-4**

145.    Each of the foregoing paragraphs is incorporated as if fully set forth herein.

146.    The Defendants conspired to concoct and report a false story regarding the circumstances of the raid on plaintiffs' home in an effort to conceal evidence of constitutional violations and thereby violated plaintiffs' rights to due process.

## COUNT IV
### Assault and Battery
**Defendants Trooper Jones, Trooper Trombley, Trooper Burgos, Officer Anderson, Officer Weir, Officer Lopes, Lt. Toledo, Officer Bohl, Officer Brown, Det. Templeman, Det. Bates and Officer Does 1-4**

147.    Each of the foregoing paragraphs is incorporated as if fully set forth herein.

148.    Defendants committed the common law torts of assault and battery against the plaintiffs and as a direct and proximate result the plaintiffs sustained the injuries described herein.

## COUNT V
### Trespass
**Defendants Trooper Jones, Trooper Trombley, Trooper Burgos, Officer Anderson, Officer Weir, Officer Lopes, Lt. Toledo, Officer Bohl, Officer Brown, Det. Templeman, Det. Bates and Officer Does 1-4**

149.    Each of the foregoing paragraphs is incorporated as if fully set forth herein.

150.    Defendants committed the common law torts of trespass against the plaintiffs and as a

direct and proximate result the plaintiffs sustained the injuries described herein

## COUNT VI
### Massachusetts Civil Rights Act, M.G.L. c. 112 § 11H
**Defendants Trooper Jones, Trooper Trombley, Trooper Burgos, Officer Anderson, Officer Weir, Officer Lopes, Lt. Toledo, Officer Bohl, Officer Brown, Det. Templeman, Det. Bates and Officer Does 1-4**

151.   Each of the foregoing paragraphs is incorporated as if fully set forth herein.

152.   These Defendants deprived the adult plaintiffs of their rights of free expression under federal and state law by using threats, intimidation and coercion, to silence their questions and protests during the raid, thereby violating the Massachusetts Civil Rights Act.

153.   As a direct and proximate result of the aforesaid unlawful conduct, the plaintiff suffered the injuries described herein.

## COUNT VII
### Intentional Infliction of Emotional Distress
**Defendants Trooper Jones, Trooper Trombley, Trooper Burgos, Officer Anderson, Officer Weir, Officer Lopes, Lt. Toledo, Officer Bohl, Officer Brown, Det. Templeman, Det. Bates and Officer Does 1-4**

154.   Each of the foregoing paragraphs is incorporated as if fully set forth herein.

155.   The conduct of these defendants towards the plaintiffs constituted intentional infliction of emotional distress.

156.   By their actions, the defendants named above subjected plaintiffs to reprehensible conduct knowingly, intentionally, willfully, purposely, maliciously and with such reckless disregard of the consequences as to display a conscious indifference to the danger of harm and injury.

157.   As a direct result of the intentional conduct of the defendants in this count, plaintiffs suffered severe emotional distress and great pain of body and mind.

## COUNT VIII
### Massachusetts Privacy Act, M.G.L. c. 214 § 1B
**Defendants Trooper Jones, Trooper Trombley, Trooper Burgos, Officer Anderson, Officer Weir, Officer Lopes, Lt. Toledo, Officer Bohl, Officer Brown, Det. Templeman, Det. Bates and Officer Does 1-4**

158.   Each of the foregoing paragraphs is incorporated as if fully set forth herein.

159.   These defendants violated plaintiffs' privacy rights under the Massachusetts Privacy Act

by unreasonably, substantially and seriously interfering with her privacy as set forth herein.

160.   As a direct and proximate result they caused plaintiffs' great pain of body and mind.

## COUNT IX
### Theft
**Defendants Trooper Jones, Trooper Trombley, Trooper Burgos, Officer Anderson, Officer Weir, Officer Lopes, Lt. Toledo, Officer Bohl, Officer Brown, Det. Templeman, Det. Bates and Officer Does 1-4**

161.   Each of the foregoing paragraphs is incorporated as if fully set forth herein.

162.   Defendants committed the common law tort of theft against the plaintiff Padro Lebron and as a direct and proximate result she sustained the injuries described herein

### PRAYER FOR RELIEF

The Plaintiff respectfully requests the Court to order the following relief:

1.      All compensatory damages recoverable;
2.      Injunctive Relief;
3.      All punitive damages recoverable;
4.      All attorney's fees, costs and expenses allowable;
5.      That defendants be found jointly and severally liable;
6.      Any and all other relief as the Court deems just and proper
7.
        PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL COUNTS IN THE COMPLAINT

Respectfully submitted,
PLAINTIFFS
By their his attorneys,

Hector E. Pineiro, BBO # 555315
Robert A. Scott BBO # 648740
Law Office of Hector E. Pineiro, P.C.
807 Main Street
Worcester, MA 01610
T. (508) 770-0600
F. (508) 770-1300
hector@pineirolegal.com
robin@pineirolegal.com

DATED:  December 3, 2020

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss                                    HAMPDEN SUPERIOR COURT

EDITH PADRO LEBRON AND CARLOS          )
SANTANA,                               )
     Plaintiffs                       )
                                      )          Civil Action No.20~~WO~~CV-_____
v.                                     )
                                      )
MASS. STATE POLICE SGT. LIAM R. JONES MSP)
TROOPER MICHAEL TROMBLEY, TROOPER      )                **20  0529**
ALFRED BURGOS, PAUL ANDERSON-          )
HAMPDEN COUNTY SHERIFF'S OFFICE,       )
LOU P. WEIR-HCS, SPRINGFIELD POLICE    )          HAMPDEN COUNTY
OFFICER WILLIAM H. LOPES, LT. JULIO    )          SUPERIOR COURT
TOLEDO-SPD, OFFICER ROBERT P. BOHL-SPD,)            **FILED**
OFFICER DONALD P. BROWN –SPD,          )
DET. MARK D. TEMPLEMAN-SPD,            )          OCT 0 9 2020
CHRISTOPHER P. BATES-SPD,  CITY OF     )
SPRINGFIELD and SPRINGFIELD POLICE     )
OFFICERSJOHN DOES 1-4,                 )          CLERK OF COURTS
     Defendants                       )

PLAINTIFF'S REQUEST FOR APPOINTMENT OF PROCESS SERVER
[Mass. R. Civ. P. 4 (c)]

    Now come the plaintiff and as per Massachusetts Rule of Civil Procedure 4 (c) she

requests this Honorable Court to appoint as process server in this action a constable of the Office

of George & Associates, 390 Main Street, Suite 1039, Worcester, Massachusetts, in order to

assure a substantial savings in time.  The undersigned affirms under the pains and penalties of

perjury that to the best of his knowledge and belief the person to be appointed is a Constable

experienced in the service of process and not a party to, or otherwise interested in, this action.

    WHEREFORE, plaintiffs respectfully request that the motion be allowed and that the

Office of George & Associates be appointed as process server in this action.

10|15|2020
Allowed

10/22/20
mailed BB

1

4